# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

STEPHANIE T. BOLDEN,           )
       Plaintiff,           )
       v.           )    Civil Action No. 18-74-CJB
THE CITY OF WILMINGTON,        )
       Defendant.           )

Geena Khomenko George, LOSCO & MARCONI, P.A., Wilmington, DE, Attorney for Plaintiff.

Aaron C. Baker, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE, Attorney for Defendant.

# MEMORANDUM OPINION

January 8, 2019
Wilmington, Delaware

*[signature]* Chutukua A. Burke
**BURKE, United States Magistrate Judge**

Presently before the Court in this case is Defendant City of Wilmington's ("Defendant" or the "City") motion seeking to dismiss Plaintiff Stephanie T. Bolden's ("Plaintiff" or "Bolden") Amended Complaint with prejudice, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 11) Plaintiff opposes the Motion. For the reasons set forth herein, the Court GRANTS the Motion in the manner set out below.

**I.      BACKGROUND**

**A.      Factual Background**

Plaintiff is a resident of Wilmington, Delaware and is a former City of Wilmington councilwoman. (D.I. 10 at ¶¶ 1, 8) Defendant is a Delaware municipal corporation. (*Id.* at ¶ 2)

Plaintiff was raised in a home located at 610 East 11th Street in Wilmington (the "Bolden Property"), which she later inherited from her father. (*Id.* at ¶ 9) The City has owned the property adjacent to the Bolden Property, located at 608 East 11th Street (the "City Property"), since January 14, 2014. (*Id.* at ¶¶ 12-13) Plaintiff alleges that the City Property has been "vacant and boarded up for approximately ten years[,]" (*id.* at ¶ 12), and that "she witnessed many occasions of vagrants, drug users, and other transient people squatting in or otherwise using the City Property" during that time, (*id.* at ¶ 13). Plaintiff asserts that since Defendant acquired the City Property, it has not performed maintenance, made repairs, or "otherwise take[n] any action to ensure that the property would be impervious to squatters and other transients." (*Id.* at ¶ 14)

Plaintiff alleges that she complained repeatedly to several City employees or agents over a period of many years about the City Property's condition and about how "vagrants, drug users and . . . transient individuals" were occupying the property. (*Id.* at ¶¶ 16-17) She also alleges

2

that she complained that conditions at the City Property were causing damage to her own property, and that there was a risk of more severe damage in the future. (*Id.* at ¶ 19) The City allegedly took no action to address Plaintiff's various complaints. (*Id.* at ¶ 23)

Plaintiff and Lennie Sophrin ("Sophrin"), then-Director of Wilmington Real Estate and Housing, met and discussed the City Property on August 2, 2017. (*Id.* at ¶ 24) Sophrin "indicated that the matter would be assigned to Tom Ford, Jr., who then went on vacation." (*Id.*) Shortly afterwards, on or around August 7, 2017, a fire occurred in the City Property, resulting in "substantial damage to the Bolden Property[.]" (*Id.* at ¶¶ 25-26) Plaintiff asserts that the damage caused by the fire has resulted in a "substantial degradation of her health, including elevated blood pressure, loss of sleep, exacerbation of her heart disease and diabetic symptoms, and anxiety." (*Id.* at ¶ 27)

**B.     Procedural Background**

On January 9, 2018, Plaintiff filed her Complaint. (D.I. 1) The parties thereafter jointly consented to the Court's jurisdiction to conduct all proceedings in the case, including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 7)

On February 14, 2018, Defendant filed a motion seeking dismissal of the Complaint. (D.I. 8) Plaintiff thereafter filed the operative Amended Complaint on February 23, 2018, which resulted in the termination of the then-pending motion to dismiss. (D.I. 10) On March 9, 2018, Defendant filed the instant Motion. (D.I. 11) The parties completed briefing on the instant Motion on April 2, 2018. (D.I. 17)

**II.     STANDARD OF REVIEW**

Pursuant to Rule 12(b)(6), a party may move to dismiss the plaintiff's complaint based on the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The

sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

In assessing such a motion, first the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679).[1] A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

## III. DISCUSSION

---

[1] In resolving the Motion, the Court may only take into account those facts alleged in the Amended Complaint; it may not consider additional facts, such as those referenced for the first time in a party's briefs. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016). In her answering brief, Plaintiff makes reference to several purported facts that are not included in the Amended Complaint. (D.I. 17 at 1 & n.1) The Court will not consider those asserted facts here.

With its Motion, Defendant argues that both Counts of the Amended Complaint—Count One's claim of deprivation of the right to property without due process of law (the "due process claim") and Count Two's claim of negligence—should be dismissed. The Court will address those issues in turn.

### A. The Due Process Claim

In Count One, Plaintiff alleges that her Fifth and Fourteenth Amendment rights were violated when the City failed to maintain the City Property and failed to act in the face of Plaintiff's complaints about the property, which resulted in "governmental deprivation of her property without due process of law." (D.I. 10 at ¶ 30) She also asserts that "[t]he City's failure to respond to Plaintiff's numerous complaints was so flagrant as to be systemic, akin to City policy[]" and that "[t]hese failures to act constitute an affirmative commission, rather than a mere omission." (*Id.* at ¶ 31)

Under 42 U.S.C. § 1983 ("Section 1983"), "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" may be liable to such person. 42 U.S.C. § 1983. The term "person" includes municipalities. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). A municipality, however, may not be held liable under a theory of *respondeat superior*. *Id.* at 691. Instead, there must be an "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Id.* at 694. "To state a [Section] 1983 claim against a municipality [i.e., a "*Monell* claim"], Plaintiff[] must: (1) identify a policy or custom that deprived [her] of a federally protected right, (2) demonstrate that the municipality, by its

5

deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and Plaintiff[]'[s] injury." *Shipley v. New Castle Cty.*, 597 F. Supp. 2d 443, 448 (D. Del. 2009).

Below, the Court will first explain why Plaintiff's failure to sufficiently plead the existence of a municipal custom dooms her Section 1983 claim for municipal liability against Defendant. Thereafter, it will also address why Plaintiff's alternative argument—that Count One should otherwise stand because it sufficiently pleads that Plaintiff was harmed pursuant to the "state-created danger doctrine"— cannot save Count One.

### 1. Plaintiff's Failure to Allege the Existence of a Municipal Custom

Plaintiff's Section 1983 claim in Count One is insufficiently pleaded because she failed to make out the first element of such a claim—i.e., to identify an existing City policy or custom that caused her to be deprived of her rights.

As noted above, in Count One, Plaintiff suggested that the City's alleged failures to respond to her complaints were "akin to [a] policy[.]" (D.I. 10 at ¶ 31) But it is clear from the record that Plaintiff is not claiming that an actual, codified City policy is at issue here. Nowhere else in the Amended Complaint does Plaintiff suggest that the City has a formal, written policy of ignoring complaints about City properties or of failing to maintain such properties. Instead, in her answering brief, Plaintiff explains that her claim rests on the assertion that the City was acting in accordance with a municipal "custom[.]" (D.I. 14 at 5)

A custom, while "not [having] received formal approval through [a] body's official decision-making channels" and "not [having been] authorized by written law," is nevertheless a practice of "state officials . . . [that is] so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citations

omitted). Plaintiff may prove a custom by either "'showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law,' or 'by evidence of knowledge and acquiescence' by the final policymakers." *Hall v. City of Wilmington*, No. C.A. 08-186-GMS/MPT, 2009 WL 928465, at *5 (D. Del. Apr. 6, 2009) (citations omitted), *report and recommendation adopted*, Civ. A. No. 08-186 GMS-MPT, 2009 WL 1530841 (D. Del. May 28, 2009). While a "single incident violating a constitutional right done by a governmental entity's highest policymaker for the activity in question may suffice to establish an official policy[,]" a "single incident by a lower level employee acting under color or law . . . does not suffice to establish either an official policy or custom." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989); *see also Hall*, 2009 WL 928465, at *5.

Here, as Defendant argues, (D.I. 12 at 8), Plaintiff relies solely on her personal experience with one property in asserting that the City has a custom of ignoring complaints and not repairing its properties. There no facts pleaded about other city properties to suggest that Plaintiff's experience is part of a pattern—i.e., that the City regularly ignores such complaints about properties like the City Property and that Plaintiff's experience is just one more example of this City "custom" being followed. This type of one-off experience cannot suffice to establish a City "custom" under the law. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("'[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'") (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).[2]

Moreover, Plaintiff's allegations are insufficient for another related reason: they suffer from a lack of specificity as to what exactly is the asserted "custom" at issue. (D.I. 12 at 8 (Defendant noting that "the Amended Complaint lacks any allegations from which the Court can

---

[2] To be sure, Plaintiff does allege that the City's failure to act here occurred repeatedly, in that she complained at various points over a number of years to various City employees, to no avail. (D.I. 10 at ¶ 16; *see also* D.I. 14 at 5 (Plaintiff asserting that "[t]he identical actions of numerous individuals, whose only link to one another is the fact that they all work for the City of Wilmington, indicates that it was not the personal, isolated decision of each employee to ignore Plaintiff's requests, but rather that it was a policy or custom of the City to take no action in the face of these requests[]")) But it certainly seems as if Plaintiff is suggesting that the City "custom" at issue (i.e., to ignore complaints about City properties) applied *only to her particular situation*. (D.I. 14 at 6 ("[T]he direct inference is that it was a City policy to virtually ignore, if not most City-owned properties, then certainly [the City Property].")) The Court is aware of no authority suggesting that a plaintiff can establish the presence of a municipal custom by alleging facts solely regarding the action/inaction of municipal employees as to the plaintiff's *own circumstance*—even if a plaintiff interacted with municipal employees on many different occasions. *See Emmert v. Clackamas Cty.*, Civil Action No. 3:13-CV-01317-HZ, 2017 WL 1946310, at *2 (D. Or. May 9, 2017) ("The pleading did not allege a widespread, pervasive custom [as] required under the custom/practice prong of *Monell* liability" because the plaintiff alleged in the complaint "at best a single plan targeting a single individual[.]") (internal citation omitted); *Izquierdo v. Sills*, 68 F. Supp. 2d 392, 410 (D. Del. 1999) (noting that "[i]n each instance, the only support for [the plaintiff's] allegations that such a custom exists are the single instances which occurred during his own disciplinary process" and that "one instance of the custom asserted cannot prove the existence of a custom which has the force of law"). The point of requiring that a plaintiff plead facts establishing that a "custom" exists would seem to be lost if that "custom" could be established based on the singular experience of one person. In such a scenario, one would not know if the plaintiff's experience was based on a *permanent and well-settled practice* of the municipality, as opposed to some *particular, unique facts about that plaintiff* and his or her relationship with the municipality. *Cf. Davis v. City of New York*, 75 F. App'x 827, 830 (2d Cir. 2003) ("'*[T]wo incidents* of unconstitutional conduct by low-level employees . . . can never provide a reasonable basis for finding a *widespread* or *well-settled* custom.'") (citation omitted) (emphasis in original); *Peters v. Cmty. Educ. Ctrs., Inc.*, No. 11-CV-850, 2014 WL 981557, at *7 (E.D. Pa. Mar. 13, 2014) (noting, in resolving a summary judgment motion, that "[a]lthough multiple individuals may have been involved in ignoring [the plaintiff's] complaints . . . the inaction by these individuals only constitutes a single incident for *Monell* purposes[]" insufficient to establish the existence of a municipal custom).

8

even deduce the alleged content or scope of the asserted custom . . . of the City.")) What exactly did the City's employees consistently do or not do when receiving complaints about troubled City properties? What pattern of action (or inaction) did lower-level City employees engage in when they received these complaints? The Amended Complaint is vague as to all of this—it is void of allegations as to who is said to have done what in a manner that amounted to a "well-settled and permanent" practice. For this reason as well, the allegations regarding the "policy or custom" prong are insufficient. *See McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."); *Postie v. Frederick*, CIVIL ACTION NO. 3:14-CV-00317, 2015 WL 7428616, at *5 (M.D. Pa. Nov. 23, 2015) (dismissing municipal liability claim after the plaintiff "fail[ed] to identify a specific . . . custom" that was in place).

### 2. State-Created Danger Doctrine

In her answering brief, Plaintiff asserted that her Section 1983 due process claim was viable under another legal doctrine: that it sufficiently alleges that Defendant failed to protect her from harm as required under the "state-created danger doctrine." (D.I. 14 at 6-13) Although the Amended Complaint does not reference this doctrine specifically, in light of Plaintiff's argument, the Court will address it here.

The Due Process Clause does not impose an affirmative duty on a state to protect a citizen not in its custody. *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006). However, under the state-created danger doctrine, a constitutional violation may occur if the state has affirmatively acted in a manner that either injured a citizen or left the citizen "more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Id.* (internal quotation marks and citation omitted). Therefore, to establish a

9

meritorious state-created danger claim, Plaintiff must plead and prove the existence of the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* (internal quotation marks and citations omitted). In responding to Plaintiff's argument about the applicability of the state-created danger doctrine in this case, Defendant argues that Plaintiff has failed to plead sufficient facts regarding the doctrine's second and fourth elements. (D.I. 17 at 4-6) The Court need only address the fourth element to find the Plaintiff's claim wanting.

Defendant asserts that the fourth element requires a municipality to have *affirmatively acted* in a manner that harmed a plaintiff; from there, Defendant argues that since Plaintiff's state-created danger claim is based on the City's *failure to act* with regard to the City Property, it cannot stand. (D.I. 17 at 4-5 & n.16 (citing D.I. 10 at ¶¶ 23, 28, 30, 31)) The Court agrees.

In *Bright v. Westmoreland Cty.*, 443 F.3d 276 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit held that for purposes of this fourth element, liability is predicated upon the state's affirmative acts which work to a plaintiff's detriment and that it is a "misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. The *Bright* Court explained that while the line between action and inaction may not always be clear, the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively

exercised." *Id.* at 282. In that case, in affirming a district court's decision to dismiss a state-created danger claim, the Third Circuit found that the plaintiff had failed to plead sufficient facts as to the fourth element. It explained "that the state cannot 'create danger' giving rise to substantive due process liability" solely by "failing to more expeditiously seek someone's detention, by expressing an intention to seek such detention without doing so, or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation." *Id.* at 283-84.[3]

Here, the City is not alleged to have taken any affirmative acts that served to place Plaintiff in a worse position than she otherwise might have faced. Instead, in the Amended Complaint, Plaintiff clearly is calling out the City's "failure to act" as the root cause of the violation of her due process rights. (*See, e.g.*, D.I. 10 at ¶¶ 28, 30) For this reason, Plaintiff has not and cannot plead a state-created-danger due process claim. *See Rodriquez v. City of Philadelphia*, 350 F. App'x 710, 713 (3d Cir. 2009) ("We have previously considered similar attempts by litigants to 'recharacterize [a state actor's] failures as affirmative actions,' and have

---

[3] Plaintiff, citing to the Third Circuit's decision in *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915 (3d Cir. 1997), argues that "an affirmative act is not required under [the fourth element of the] state-created-danger doctrine." (D.I. 14 at 12) And indeed, *Morse* does include language that can be read to support this assertion. *See Morse*, 132 F.3d at 915 ("Thus, the dispositive factor [as to the fourth element of the doctrine] appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission.") But subsequent to the decision in *Morse*, the Third Circuit has repeatedly clarified—both in *Bright* and in its subsequent opinion in *Kaucher v. Cty. of Bucks*, 455 F.3d 418 (3d Cir. 2006)—that the fourth element of the doctrine does, in fact, require an affirmative act on the part of the defendant. *See Kaucher*, 455 F.3d at 432 & n.9; *Bright*, 443 F.3d at 282; *see also Gayeman v. Sch. Dist. of the City of Allentown*, CIVIL ACTION NO. 14-CV-1518, 2016 WL 3014896, at *9 n.7 (E.D. Pa. May 26, 2016) (noting that despite the language in *Morse*, *Bright* and *Kaucher* make it clear that Third Circuit precedent requires an affirmative act of the state, for purposes of the fourth element of the doctrine). To the extent Plaintiff argues otherwise, her argument is foreclosed by these more recent Third Circuit decisions.

consistently held that a plaintiff must show more than the government's 'failure to prevent' an injury in order to prevail on a state-created danger claim.") (citations omitted) (alteration in original); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 433 (3d Cir. 2006) (finding that a plaintiff's allegations that the defendants *failed to act* affirmatively to improve conditions in a jail, or that the defendants *failed to act* affirmatively to educate, warn and train inmates and corrections officers about the prospect of an MSRA infection and how to prevent such an infection, were all insufficient to establish the fourth element of a state-created danger claim, since these allegations were not "affirmative acts" that were the but-for cause of harm to the plaintiff).

**B.     Negligence**

With regard to Count Two's negligence claim, Defendant asserts that it is immune from suit for such a claim and that, alternatively, Plaintiff otherwise failed to allege sufficient facts to make out the claim. (D.I. 12 at 11-16) Because the Court finds the City is immune from suit as to Count Two, it need not address Defendant's alternative argument.

Defendant bases its immunity argument on Delaware's County and Municipal Tort Claims Act (the "MTCA" or "the Act"). The MTCA establishes "broad immunity for local government entities subject only to specific exceptions set forth in the Act[]"—exceptions that "are construed narrowly." *Heaney v. New Castle Cty.*, 672 A.2d 11, 13-14 (Del. 1995). The MTCA states: "Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a). The Act then sets out three exceptions to this immunity grant, which relate to certain acts or omissions by a local government, *see Heaney*, 672 A.2d at 14; these exceptions are the only activities as to which municipal liability is waived under the statute, *see Fiat Motors of N. Am., Inc. v. Wilmington*, 498 A.2d 1062, 1066 (Del. 1985).

12

Plaintiff argues that her negligence claim is viable because it falls within the second of these exceptions—the MTCA's public building exception. (D.I. 14 at 14-15) This part of the statute provides that "[a] governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage . . . [i]n the construction, operation or maintenance of any *public building* . . . ." 10 Del. C. § 4012(2) (emphasis added). In explaining why the City Property amounts to the type of "public building" referred to by the statute, Plaintiff cites to the Delaware Supreme Court's decision in *Moore v. Wilmington Housing Auth.*, 619 A.2d. 1166 (Del. 1993). (D.I. 14 at 14)

In *Moore*, the key legal issue was whether a leased dwelling unit owned by a public housing authority amounted to a "public building" under the meaning of the MTCA. *Moore*, 619 A.2d at 1167. In evaluating this question, the *Moore* Court, *inter alia*, provided guidance as to what constitutes a "public" building under the statute.[4] The Court noted that in order to determine whether a building is a "public" one, a court should consider "the public policy character of the building." *Id.* at 1174. It explained that the "public purpose ingredient of the definition leads to the conclusion that a building is necessarily one operated and maintained for a public purpose if its function is to benefit the public or the community." *Id.* The *Moore* Court further noted that there need not be freedom of access to such a building by the general public; instead, "a building which otherwise qualifies as a public building and is open to those members of the public who use it for its intended purpose is a 'public building'" for purposes of the MTCA, even if "access is limited only to those members of the public (e.g., tenants and their

---

[4] The Court focuses here on the "public" element of the public building exception, as Defendant does not contest the fact that the City Property amounts to a "building" under the meaning of the MTCA. (D.I. 12 at 13)

13

guests) who use it for its intended purpose." *Id.* at 1174-75. The Court ultimately concluded that the low-cost housing unit at issue in the case was a "public building," because even though there was only limited access to the unit, it was still found within a building "operated and maintained by a governmental entity for a public purpose, and it is open to those members of the public (and their guests) who use it for its intended purpose." *Id.* at 1175; *see also Windley v. Potts Welding & Boiler Repair Co., Inc.*, No. Civ.A. 94-432-SLR, 1996 WL 31211, at *2 (D. Del. Jan. 18, 1996) (noting that to qualify as a public building under the MTCA, a building must, *inter alia*, "serve a public purpose" and be "'open to those members of the public who use it for its intended purpose'") (quoting *Moore*, 619 A.2d at 1174-75).

Unlike the property in *Moore*, which was a city housing unit that was occupied by a tenant, the City Property is a "vacant" house, which has been "boarded up" for many years. (D.I. 10 at ¶ 12) The Amended Complaint does not allege (and indeed, the Court does not see how it *could* be alleged) that at the time of the claimed negligence, the property was "open to those members of the public . . . who use it for its intended purpose." To the contrary, the property is alleged to have not been "open" at all and to have been off-limits to the general public. Although the Amended Complaint does assert that there were nevertheless "many occasions" when "vagrants, drug users, and other transient people [were] squatting in or otherwise using the City Property[,]" (*id.* at ¶ 13), Plaintiff cannot credibly claim that these persons were accessing the building for its "intended purpose." In fact, the entire thrust of Plaintiff's claim here is that such persons had *no authority* to be using the City Property and that the City should have done something about this misuse earlier than it did. (D.I. 10 at ¶ 33 (Plaintiff, in Count Two, alleging that Defendant was negligent because it "*failed to secure* the City Property" so as to prevent entry by "vagrants, drug users and other non-resident transient individuals") (emphasis added);

14

*see also id.* at ¶ 14); *compare Windley*, 1996 WL 31211 at *3 (finding that an electric power generating plant could not have been a public building under the MTCA as in "its normal operation, when the plant is fulfilling its intended purpose, no members of the public are required, or even permitted, to come into contact with it at all"), *with Bartley v. Norfolk S. Corp.*, C.A. No. 08C-08017(RBY), 2009 WL 2415726, at *2 (Del. Super. Ct. Aug. 6, 2009) (stating that a post office is a public building because it is "held open for use by the general public").

Therefore, unlike the property in *Moore*, the property at issue here was not a "public" building. As a result, the public building exception to the MTCA cannot apply, and Defendant is immune from suit as to Count Two. For that reason, Count Two must be dismissed.

## IV. CONCLUSION

For the reasons above, the Motion is GRANTED.

With regard to the state-created danger doctrine claim and Count Two's negligence claim, it is clear to the Court that it would be futile to permit Plaintiff to further amend her complaint as to those legal theories. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("Our precedent supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").[5] However, it is not absolutely clear to the Court that Plaintiff could not overcome the pleading

---

[5] With regard to the state-created danger doctrine, as noted above, the doctrine requires an affirmative act of the municipality and it is clear that it is the failure to act that is the basis of Plaintiff's claim. As to the negligence issue, as set out above, the building was not a public property by its nature. These facts will not change and so there is no basis to permit amendment of the Amended Complaint as to them.

15

deficiency regarding her allegations as to a municipal custom. Therefore, the Court will provide Plaintiff with one further opportunity to amend the *Monell* claim in that regard. Plaintiff may file a Second Amended Complaint no later than **January 22, 2019**. Failure to do so will result in complete dismissal of this action. An appropriate Order follows.